UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT SCOTT,<br><br>                Plaintiff,<br><br>v.<br><br>CENTENNIAL RESOURCE DEVELOPMENT, INC., SEAN R. SMITH, MAIRE A. BALDWIN, MATTHEW G. HYDE, PIERRE F. LAPEYRE, JR., DAVID M. LEUSCHEN, VIDISHA PRASAD, STEVEN J. SHAPIRO, JEFFREY H. TEPPER, and ROBERT M. TICHIO,<br><br>                Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Robert Scott ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Centennial Resources Development, Inc. ("Centennial" or the "Company") and Centennial's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of the Board's attempt to merge with Colgate Energy Partners III, LLC ("Colgate").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading definitive proxy statement (the "Proxy") to be filed with the Securities and Exchange Commission ("SEC") on July 28, 2022. The Proxy recommends that Centennial stockholders vote in favor of a proposed transaction (the "Proposed Transaction") whereby Centennial's wholly-owned subsidiary, Centennial Resource Production,

1

LLC ("CRP"), will merge with and into Colgate, with CRP surviving the merger and continuing as a subsidiary of Centennial. The Proposed Transaction was first disclosed on May 19, 2022, when Centennial and Colgate announced that they had entered into a definitive business combination agreement (the "Merger Agreement") pursuant to which Centennial will issue 269,300,000 shares of Centennial Class C common stock and 269,300,000 units in CRP (the "Stock Issuance") and pay $525,000,000 in cash (along with the Stock Issuance, the "Merger Consideration") in exchange for Colgate Energy Partners III MidCo, LLC (the "Colgate Unitholder")'s sole membership interest in Colgate. The deal is valued at approximately $7 billion and is expected to close in the in the second half of 2022.

3. The Proxy is materially incomplete and contains misleading representations and information in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections prepared by Centennial management, as well as the financial analyses conducted by Citigroup Global Markets Inc. ("Citi"), Centennial's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Stock Issuance and/or the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to the Proxy to be disseminated to Centennial's stockholders, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Centennial's stockholders. In the event the Stock Issuance and/or the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Centennial.

6. Defendant Centennial is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 1001 Seventeenth Street, Suite 1800, Denver, Colorado 80202. Centennial common stock trades on the Nasdaq Capital Market under the ticker symbol "CDEV."

7. Defendant Sean R. Smith has been the Chief Executive Officer and a director of the Company since 2020.

8. Defendant Maire A. Baldwin has been a director of the Company since 2016.

9. Defendant Matthew G. Hyde has been a director of the Company since 2018.

10. Defendant Pierre F. Lapeyre, Jr. has been a director of the Company since 2016.

11. Defendant David M. Leuschen has been a director of the Company since 2016.

12. Defendant Vidisha Prasad has been a director of the Company since 2021.

13. Defendant Steven J. Shapiro has been a director of the Company since 2019. Defendant Shapiro serves as Chairman of the Board.

14. Defendant Jeffrey H. Tepper has been a director of the Company since 2016.

15. Defendant Robert M. Tichio has been a director of the Company since 2016.

16. Nonparty Colgate is a privately-held oil and natural gas company based in Midland, Texas. Colgate's principal executive offices are located at 300 N. Marienfeld Street, Suite 1000, Midland, Texas 79701.

**JURISDICTION AND VENUE**

17. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

18. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

19. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

A. **Background of the Company and the Proposed Transaction**

20. Centennial is an independent oil and natural gas company focused on the development of oil and associated liquids-rich natural gas reserves in the Permian Basin. The Company's assets and operations, which are held and conducted through CRP are concentrated in the Delaware Basin, a sub-basin of the Permian Basin.

21. On May 19, 2022, the Company entered into the Merger Agreement with Colgate. According to the press release issued that day announcing the Stock Issuance and the Proposed Transaction:

**Centennial Resource Development and Colgate Energy to Combine, Creating $7.0 Billion Permian Basin Pure-Play**

DENVER and MIDLAND, Texas, May 19, 2022 (GLOBE NEWSWIRE) -- Centennial Resource Development, Inc. ("Centennial" or the "Company") (NASDAQ: CDEV) and Colgate Energy Partners III, LLC ("Colgate") today announced they have entered into an agreement to combine in a merger of equals transaction. The combined company will be the largest pure-play E&P company in the Delaware Basin with approximately 180,000 net leasehold acres, 40,000 net

royalty acres and total current production of approximately 135,000 Boe/d. The combined company plans to leverage its high-quality, scaled asset base to drive leading shareholder returns.

**Key Highlights**

- High-quality, complementary asset base with differentiated inventory depth to support sustainable free cash flow growth
- Positioned to significantly increase cash returns to shareholders, with over $1 billion of expected free cash flow1 in 2023 at current strip prices
- Highly accretive to key financial metrics, including cash flow, free cash flow and net asset value per share
- Strong balance sheet with expected leverage2 below 1.0x at year-end 2022
- Sean Smith to serve as Executive Chair of the Board; Will Hickey and James Walter to serve as Co-CEOs
- Significant equity ownership of combined management team aligns with shareholders
- Shared commitment to prioritizing ESG with continued focus on reducing environmental impact

**Management Commentary**

"This transformative combination significantly increases scale and drives accretion across all our key financial and operating metrics. Colgate's complementary, high-margin assets are a natural fit for Centennial, creating the largest pure-play E&P company in the Delaware Basin," said Sean Smith, Chief Executive Officer of Centennial. "Importantly, the combined company is expected to provide shareholders with an accelerated capital return program through a fixed dividend coupled with a share repurchase plan. We are excited to partner with Colgate as we share a common vision for the pro forma company that includes a strong balance sheet, a disciplined investment program to drive cash flow and a robust return-of-capital program."

"The Colgate and Centennial teams have each demonstrated a track record of execution through the years, and we are excited to assume leadership roles in the new company to build upon that success and guide the next phase of value creation. Both companies have established strong financial and operational cultures, and we expect the combined company will be a top-tier, low-cost operator that is able to deliver better margins and shareholder returns," said Will Hickey, Co-CEO of Colgate.

"The merger of Colgate and Centennial is compelling from a financial, operational and strategic standpoint, establishing a leading Permian Basin independent. We believe the pro forma company is positioned to maximize returns for our new investor base, with our combined management team bringing a track record of operational excellence and strategic value creation. Management's significant

5

ownership in the combined company should give investors confidence that long-term value creation will always be our top priority," said James Walter, Co-CEO of Colgate.

**Transaction Details**

The approximately $7.0 billion merger of equals values Colgate at approximately $3.9 billion and is comprised of 269.3 million shares of Centennial stock, $525 million of cash and the assumption of approximately $1.4 billion of Colgate's outstanding net debt. Given existing cash balances and interim free cash flow, the company expects its net debt-to-LTM EBITDAX ratio at closing to be approximately 1.0x. The cash consideration and the repayment of Colgate's outstanding credit facility borrowings at closing are expected to be funded with cash on hand and borrowings under an upsized revolving credit facility.

The transaction has been unanimously approved by the Boards of Directors of both companies and is expected to close in the second half of 2022. The company intends to provide detailed forward-looking guidance for the remainder of 2022 at or shortly after closing of the transaction.

**Differentiated E&P Platform**

- **Return of Capital.** The scaled cash flow base and balance sheet of the combined company provides clear line of sight to significant near-term shareholder returns.
- **Combining Best Practices.** The combined company intends to integrate leading-edge operational practices from two, highly skilled teams with proven track records. This leveraging of best practices from both organizations positions the combined company for continued success.
- **Deep Inventory of High-Return Locations.** The combined company's adjacent acreage position, coupled with its high-return inventory supports a highly capital-efficient development plan and provides operational flexibility. Upon closing, the combined company will have over 15-years of drilling inventory, assuming its current drilling pace.
- **Maximizing Shareholder Alignment.** Upon closing, the combined company will have one of the largest management ownership interests of any public E&P company, with the management team owning approximately 12% of the pro forma total shares outstanding. As a result, the company will be highly focused on increasing shareholder value.
- **Commitment to ESG and Sustainability.** As both companies have demonstrated significant reductions in emissions intensity and natural gas flaring to date, ESG excellence will continue to be a core competency of the combined company.

\*   \*   \*

"Centennial and Colgate are a clear strategic fit, combining two complementary acreage footprints in the core of the Delaware Basin. We are firm believers in the combined management team and their strategy, and we look forward to creating additional long-term value for stakeholders," said William Quinn, Founder and Managing Partner of Pearl.

Immediately following the closing, existing Centennial shareholders will own approximately 53% of the combined company, and existing Colgate owners will own approximately 47% of the combined company. Centennial's largest shareholder, Riverstone, which currently owns approximately 25% of Centennial's outstanding shares, has executed a Voting and Support Agreement in connection with the transaction. The closing of the merger is subject to customary closing conditions, including approval by Centennial shareholders and regulatory approvals.

### B. The Materially Incomplete and Misleading Proxy

22. On July 28, 2022 Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Stock Issuance and/or the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Stock Issuance and/or the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts***

23. The Proxy discloses management-prepared financial projections for the Company which are materially misleading. The Proxy indicates that in connection with the rendering of Citi's fairness opinion, Citi reviewed "certain financial forecasts and other information and data relating to Colgate and Centennial prepared by the management of Centennial." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that Centennial's management provided to the Board and Citi.

24. Notably, Defendants failed to disclose the line item entries forming the basis of the Company's: (a) EBITDAX; (b) Cash Flow from Operations (Pre-NWC); (c) Free Cash Flow (Levered); and (d) Free Cash Flow (Unlevered) for forecasts for Centennial and Colgate using the NYMEX strip pricing and the Wall Street consensus pricing.

25. The Proxy also fails to disclose the information and data provided to or discussed with Citi by Centennial management "relating to potential strategic implications, cost savings, tax benefits and other financial and operational benefits (including the amount, timing and achievability thereof) anticipated by such management" as a result of the Proposed Transaction.

26. This omitted information is necessary for Plaintiff to make an informed decision on whether to vote in favor of the Stock Issuance and/or the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning Citi's Financial Analyses

27. With respect to the *Discounted Cash Flow Analysis,* the Proxy fails to disclose, for both Colgate and Centennial: (a) the terminal values; and (b) the key data, inputs, and assumptions that form the basis of the range of discount rates applied by Citi.

28. With respect to the *Selected Precedent Transactions Analysis*, the Proxy fails to disclose the specific financial multiples and metrics for each transaction studied.

29. With respect to the *Selected Public Companies Analysis,* the Proxy fails to disclose the specific financial multiples and metrics for each company studied.

30. With respect to the *Net Asset Value Analysis* performed by Citi for both Colgate and Centennial, the Proxy fails to disclose: (a) the unlevered, after-tax free cash flows that Colgate was projected to generate from Colgate's proved developed reserves, drilled uncompleted reserves and currently undeveloped reserves in Texas and New Mexico, net of general and administrative expenses; (b) the unlevered, after-tax free cash flows that Centennial was projected to generate

from Centennial's proved developed reserves and currently undeveloped reserves in Texas and proved developed reserves, drilled uncompleted reserves and currently undeveloped reserves in New Mexico, net of general and administrative expenses; and (c) the key data, inputs and assumptions forming the basis of the range of discount rates applied by Citi.

31. With respect to the *Illustrative Has/Gets Analysis* performed by Citi, the Proxy fails to disclose: (a) the anticipated strategic implications, cost savings, tax benefits and other financial and operational benefits expected by Centennial to result from the Proposed Transaction; (b) estimated debt to be incurred or assumed by Centennial in connection with the Proposed Transaction; and (c) the fiscal year 2023 estimated cash flow and fiscal year 2023 estimated free cash flow yield of Centennial on a pro forma basis.

32. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Stock Issuance and the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

33. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Stock Issuance and the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

34. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information

referenced above.

35. Further, the Proxy indicates that on May 18, 2022, Citi reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Centennial stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Citi's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

36. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Defendants have filed the Proxy with the SEC with the intention of soliciting Centennial stockholder support for the Stock Issuance and the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

39. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Centennial, were aware of the omitted information but failed to disclose such information, in violation of

Section 14(a).

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.     Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; and (ii) the value of Centennial shares and the financial analyses performed by Citi in support of its fairness opinion.

42.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Stock Issuance and the Proposed Transaction; indeed, the Proxy states that Citi reviewed and discussed its financial analyses with the Board during various meetings including on May 18, 2022, and further states that the Board considered Citi's financial analyses and fairness opinion in connection with approving the Stock Issuance and the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

43.     The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are

not corrected prior to the vote on the Stock Issuance and the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Centennial within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Centennial and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act

violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Stock Issuance and the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Stock Issuance and the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

48. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to Centennial

stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

   B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Stock Issuance and/or the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

   C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

   D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

   E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

   F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 13, 2022 **ROWLEY LAW PLLC**

*S/ Shane T. Rowley*
Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*